**Ex parte Jerry D. WATSON.**

No. 65267.

Court of Criminal Appeals of Texas, En Banc.

Oct. 22, 1980.

Jimmy B. Wright, Tahoka, for appellant.

Joe Smith, Dist. Atty., and Ricky Smith, Asst. Dist. Atty., Seminole, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

PHILLIPS, Judge.

This is an application for a writ of habeas corpus filed pursuant to Article 11.07, V.A. C.C.P.

On January 4, 1972, petitioner pleaded guilty to the offense of murder and was assessed a life sentence. Prior to petitioner's entry of the guilty plea a jury found him presently sane to enter the plea. On July 3, 1979, the Court considered petitioner's writ of habeas corpus, and ordered that a retrospective competency hearing be held. On October 3, 1979, the retrospective hearing was held, and the jury found that petitioner was competent at the time he entered his guilty plea. Petitioner attacks the retrospective finding of competency on numerous grounds.

Petitioner contends that the trial court erred in overruling petitioner's motion to quash the jury because it contained no blacks and no persons 18–21 years of age. Petitioner asserts that he has established a prima facie case of exclusion of these groups. In support of his argument petitioner points out that the panel was selected from county voter registration lists.

We have held that the selection of jurors from voter registration lists does not in itself show a systematic exclusion of a class. *Granviel v. State*, 552 S.W.2d 107 (Tex.Cr.App.1976). Petitioner failed to show that state officials discriminated against blacks or 18–21 year olds in calling people for jury duty. *Johnson v. State*, 548 S.W.2d 700 (Tex.Cr.App.1977); see also *Curtis v. State*, 573 S.W.2d 219 (Tex.Cr.App. 1979). In addition, petitioner failed to file his motion to quash the jury until after the jury had been selected, impaneled, and sworn. See Article 35.06, V.A.C.C.P.; *Ramsour v. State*, 165 Tex.Cr.R. 481, 308 S.W.2d 56 (1957); *Resendez v. State*, 80 Tex.Cr.R. 26, 207 S.W.2d 91 (1948). No error is shown.

Petitioner next contends that the trial court erred in admitting, over objection, medical records concerning petitioner's mental health. Petitioner asserts that the admission of this evidence violated the physician/patient privilege established by Article 5561h, V.A.C.S. At trial petitioner also objected to testimony of the state's expert psychiatric witness on the ground that the testimony was based on the medical records. The records were admitted as business records pursuant to Article 3737e, V.A.C.S.

Under common law, there is no confidential relationship between physicians and patients. *Granviel*, supra; *Caddo Grocery & Ice v. Carpenter*, 285 S.W.2d 470 (Tex.Civ.App.–Austin 1955, no writ). However, Article 5561h, supra, establishes as a matter of statutory law a confidential relationship in regard to mental health care. Communications between the patient and mental health "professional," as defined in the statute, are made privileged. The privilege extends to the patient's identity, diagnosis, evaluation, and treatment. Certain exceptions to the privilege exist in court proceedings. Suffice it to say that none of the exemptions applies to the case before us. Nonetheless, we find that the statute was not violated by the admission of the medical records.

The statute became effective August 27, 1979. The initial competency hearing for petitioner occurred on November 4, 1971. At that hearing, the medical records in question were admitted in evidence. The records were properly admitted because at that time communications between petitioner and the psychiatrist were not privileged. Any confidentiality that may have existed was removed by the admission of the records in evidence at the 1971 hearing. Because the records were revealed prior to the effective date of the statute, they do not constitute confidential communications un-

der the statute. The records were admissible. Petitioner's grounds of error are overruled.

Petitioner complains that a letter allegedly written by him was admitted without the proper predicate as to authentication. Petitioner's trial objection was overruled. The record reveals that only evidence of authorship was from petitioner's brother, who testified that the writing "looks like" petitioner's handwriting.

■ It is competent to give evidence of handwriting by comparison, made by experts or by the jury. Article 38.27, V.A.C. C.P. In our case, the jury had the opportunity to determine the authenticity of the letter by comparing it with other of petitioner's writings that were already in evidence. Since petitioner never contested the authenticity of the letter under oath, the only proof needed was the comparison with the other samples. Article 38.27, supra; see also Tex.R.Civ.P. 93(h); Herndon v. State, 543 S.W.2d 109 (Tex.Cr.App.1976). No error is shown in admitting the letter.

In this same ground of error, petitioner contends that the court erred in admitting an affidavit signed by petitioner. The affidavit stated that, contrary to advice of counsel, petitioner was pleading guilty to murder. Petitioner contends that the affidavit was inadmissible to show his competency because it was dictated by petitioner's counsel rather than by petitioner himself.

■ Although there was evidence that petitioner did not dictate the affidavit, there was evidence that petitioner read the affidavit and corrected parts of it. The jury reasonably could have believed that petitioner had contributed to the affidavit, or at least was competent enough to understand the nature of the affidavit. This is especially true since petitioner himself made the decision to plead guilty against his own attorney's advice. All of the evidence as to the authorship of the affidavit was before the jury. Even if the affidavit were dictated by petitioner's attorney, the circumstances surrounding the composing of the affidavit were of sufficient probative force to justify its admission on the issue of petitioner's competency.

■ As a general rule, any ultimate fact may be established by circumstantial evidence from which the jury may draw reasonable inferences. Gregory v. Texas Employers Insurance Association, 530 S.W.2d 105 (Tex.1975); Azores v. Samson, 434 S.W.2d 401 (Tex.Civ.App.–Dallas 1968, no writ). In the end, petitioner is attacking the credibility of the affidavit, not its admissibility. As the factfinder, the jury is the sole determiner of the credibility of the evidence. Kentucky Central Life Insurance Company v. Fannin, 575 S.W.2d 76 (Tex. Civ.App.–Amarillo 1978, no writ). The admission of the affidavit was not error.

■ Under the same ground of error, petitioner contends that the court erred in admitting his high school report card in evidence. According to petitioner the report card, dated 1955–59, is too remote to have any bearing on his competency in 1972. The purpose of admitting evidence of petitioner's educational background was to show his ability to comprehend different subject areas. The psychiatrist testified that the report card demonstrated petitioner's capability to comprehend a subject matter and deal with it. We have held that such evidence is relevant to the determination of a defendant's sanity. Thomas v. State, 97 Tex.Cr.R. 432, 262 S.W. 84 (1924). Moreover, the report card was part of a string of evidence that established a consistent pattern of behavior on the part of petitioner. As such, it aided the psychiatrist in forming an opinion concerning petitioner's competency. See Miguez v. Miguez, 221 S.W.2d 293 (Tex.Civ.App.–Beaumont 1949, no writ). The report card was admissible.

Next petitioner contends that the verdict is contrary to the great weight of the evidence. Relying on the direct testimony of his brother, aunt, and uncle, petitioner claims to have established his incompetency by a preponderance of the evidence. Further, petitioner argues that the state failed to rebut that evidence.

■ We initially are confronted with the question whether this Court is empowered to consider petitioner's claim. In White v.

*State*, 591 S.W.2d 851 (Tex.Cr.App.1979), it was held that, unlike the Courts of Civil Appeals, this Court does not have fact jurisdiction. The Court held that it could not consider a contention that the jury's finding of competency was against the great weight and preponderance of the evidence. We are constrained to follow that decision.

Moreover, we note that the state provided ample evidence to contradict petitioner's claim of incompetency. The prosecutor introduced not only two previous psychiatric reports, but also the testimony of a third psychiatrist. Several state's witnesses testified that they had ample opportunity to observe the actions and communications of petitioner. They testified that he was rational and understood what was happening at his trial in 1972.

Petitioner insists that the court erred in failing to grant his motion for new trial. Petitioner alleges that during a recess the court allowed the jury access to state witnesses and law enforcement personnel. At the hearing on petitioner's motion for new trial, the petitioner called the court bailiff and the county sheriff to the stand. These witnesses testified that, although they may have spoken to the jurors, they did not discuss any aspects of the case. The only evidence of alleged misconduct of state witnesses comes from the petitioner himself. He testified that he saw the jurors talking with two state witnesses, but could not tell what was said or which jurors were involved.

■ There is a general presumption that a defendant is injured whenever jurors converse with unauthorized persons about a case. *McMahon v. State*, 582 S.W.2d 786 (Tex.Cr.App.1978); *Williams v. State*, 463 S.W.2d 436 (Tex.Cr.App.1971); see Article 36.22, V.A.C.C.P. However, it is the defendant's burden to establish that the conversation between a non–sequestered juror and another concerned the case at trial. *Starvaggi v. State*, 593 S.W.2d 323 (Tex.Cr.App.1979). Petitioner failed to meet his burden in this case. This ground of error is overruled.

■ In two grounds of error petitioner contends that the trial court erred in its attempt to implement this Court's order remanding for a retrospective competency hearing. The first contention is that the trial court erred in failing to enter an order to the effect that it was possible to conduct a retrospective competency hearing. The record discloses that the retrospective hearing was scheduled in advance for October 1, 1979. Also included in the record are numerous orders, pleadings, and motions from both the state and petitioner that show that a determination to hold the new hearing had been made by the court. Moreover, no objection was made by petitioner to the court's failure to enter an order expressly determining that a retrospective hearing was feasible. Petitioner's silence must be viewed as consent. No error is shown.

■ Second, petitioner contends that there should have been a jury finding as to the feasibility of holding the retrospective competency hearing. Petitioner misconstrues this Court's order remanding for the retrospective competency hearing. Our order stated:

> . . . the appropriate remedy in a situation such as that presented here would be to remand the case for further proceedings to determine whether it would be possible to conduct a nunc pro tunc competency hearing, and, if it is, to hold such a hearing following the present version of Article 46.02, Vernon's Ann. C.C.P.

The order directs the *trial court* to determine the feasibility of the retrospective competency hearing. The setting of the hearing, the order for a psychiatric examination, and the numerous motions and orders entered all indicate that the trial court made the necessary determination. No error is shown.

Petitioner's final ground of error raised a novel question. He contends that any evidence that originated after the date of the original competency hearing is irrelevant and thus was inadmissible at the retrospective competency hearing. This ground of error is directed at eleven documents, including letters and various legal pleadings,

all executed by the petitioner after January 4, 1972. The latest documents were executed in 1975. Petitioner's objection to the admission of these documents was overruled.

The documents served as part of the basis for the opinion of the state's psychiatrist concerning petitioner's competency as of January 4, 1972. The expert testified that the documents:

> . . . are communicating pertinent, appropriate material in a competent way; and if this were the same, this sort of capability existed, which appears that it did in that communication of 1972, that it reveals to me, competency.

> . . . There is a consistent thought of how to gain freedom, how to better one's situation, of how to try to accomplish a better status for the individual.

> They are all goal–oriented, and they all seem to be directed, and consistently, they stay in the same direction, toward gaining freedom.

*Bruce v. Estelle*, 536 F.2d 1051 (5th Cir. 1976), dealt with a retrospective hearing on competency. In reviewing the evidence supporting the finding of competency, the court considered medical opinions that were based on medical reports, legal reports, and interviews that occurred up to four years after the initial hearing. E. g., 536 F.2d at 1055, n. 1. The court went on to reverse the case based on evidence accumulated over a nine–year period following the original hearing.

In our case, the psychiatrist showed that the "post–dated" evidence was relevant and probative in determining petitioner's competency as of the date of the original competency hearing. Although the medical information contemporaneous with the original hearing may have been more probative, the post–dated evidence enhanced the accuracy of the assessment of competency. We hold that the documents dated after the original hearing were relevant in that they aided the psychiatrist and the jury in evaluating petitioner's competency. The weight to be attached to the post–dated evidence is, of course, left to the jury as the factfinder. Petitioner's final ground of error is overruled.

Relief denied.

DOUGLAS and DALLY, JJ., concur in result.